CLERK'S OFFICE
A TRUE COPY
May 18, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original          ❏ Dup...

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**devices associated with E.R.** | )<br>)<br>)   Case No.        26-MJ-90<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____06/01/2026_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable William E. Duffin_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:       05/18/2026 at 10:30 a.m.                          *William E. Duffin*
*Judge's signature*

City and state:       Milwaukee, Wisconsin                          Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

The property to be searched includes; Black iPhone cellular phone, unknown serial number (Item #10), Black Samsung cellular phone, unknown serial number (Item #11), Black iPhone cellular phone, unknown serial number (Item # 12), Black Motorola cellular phone, unknown serial number (Item # 14), Samsung cellular phone with multi-color case, unknown serial number (Item # 15), Blue Samsung cellular phone, unknown serial number (Item # 16), Black Samsung cellular phone, unknown serial number (Item # 17), Dark blue Samsung cellular phone, unknown serial number (Item # 21), Red iPhone cellular phone, unknown serial number (Item # 22)**.** The listed devices are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Dr, St Francis, Wisconsin 53235.

22

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.      The following materials, which constitute evidence of the commission of a criminal offense; contraband; the fruits of crime; or property designed, or intended for use, or which is or has been used as the mans of committing a criminal offense, namely violations of Title 21, United States Code, Sections 841 and 846; and Title 18, United States Code Section 2251(a) and 2252A(a):

    a.  For any electronic storage device, computer hard drive, electronic device, or other physical object upon which electronic information can be recorded (hereinafter, "electronic storage device") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

        i.  Evidence of who used, owned, or controlled the electronic storage device at the time of the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

        ii.  Evidence of software that would allow others to control the electronic storage device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        iii.  Evidence of the lack of such malicious software;

iv. Evidence indicating how and when the electronic storage device was accessed or used to determine the chronological context of electronic storage device access, use, and events relating to crime under investigation.

v. Evidence indicating the electronic storage device user's location and state of mind as it relates to the crime under investigation;

vi. Evidence of the attachment to the electronic storage device of other storage devices or similar containers for electronic evidence;

vii. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the electronic storage device;

viii. Evidence of the times the electronic storage device was used;

ix. Passwords, encryption keys, and other access devices that may be necessary to access the electronic storage device;

x. Documentation and manuals that may be necessary to access the electronic storage device or to conduct a forensic examination of the electronic storage device; and,

xi. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

24

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

CLERK'S OFFICE
A TRUE COPY
May 18, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| **devices associated with E.R.** | ) ) ) |

Case No.     26-MJ-90

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

see Attachment A,

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, 846; 18 U.S.C. §§ 2251; 2252A | distribution of controlled substances; use of a communication facility to distribute controlled substances; conspiracy to distribute controlled substances; production of child pornography; possession of child pornography |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DAVID SHAMSI    Digitally signed by DAVID SHAMSI
Date: 2026.05.14 21:58:25 -05'00'

*Applicant's signature*

FBI SA David Shamsi

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date:     05/18/2026

*Judge's signature*

City and state:  Milwaukee, Wisconsin          Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, David Shamsi, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1.        Your Affiant is a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.  Your Affiant has been a Special Agent with the FBI since January 2021 and is assigned to the FBI's Milwaukee Area Safe Streets Task Force (MASSTF), a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including narcotics trafficking and conspiracy to possess narcotics with intent to distribute, as defined under Title 21 of the United States Code.   Your Affiant has been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. Your Affiant has participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects.  As a result of this training and investigative experience, your Affiant has learned how and why narcotics traffickers typically conduct various aspects of their criminal activities.  Your Affiant has experience in the investigation of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.   Through your Affiant's training,

1

education, and experience, your Affiant became familiar with the manner in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs. In addition, your Affiant has conducted follow-up investigations concerning the concealment of assets, money, and bank records, and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs, and bank checks, all as related to drug trafficking.

2.     Your Affiant has participated in investigations involving the interception of communications made via wire and electronic communication devices and is familiar with the ways in which drug traffickers conduct their business, including, but not limited to: their methods of importing and distributing drugs; their use of cellular telephones and digital display paging devices; and their use of numerical codes and code words to conduct their transactions.  Your Affiant has also reviewed and interpreted hundreds of conversations related to the distribution of heroin, cocaine, and other controlled substances.

3.     The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training, experience, and participation in drug trafficking investigations, I know and have observed the following:

2

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States;

b. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

c. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

d. I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

e. I know that large-scale drug traffickers will frequently use firearms to protect their narcotics, proceeds, and persons, since such drug traffickers are reticent to involve law enforcement in their affairs;

f. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe

3

deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

g.      I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

h.      It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time.  It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, offices, or personal residence.

i.      It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner.  These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

4

j.      I know large-scale drug traffickers often use electronic equipment such as telephones, pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k.      I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

l.      I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

m.      I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their associates and financial institutions; That drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and

5

any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices;

n. Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

5. This affidavit is submitted in support of an application for a search warrant seeking authorization to examine electronic devices, described more fully in Attachment A and currently in law enforcement's possession, and the extraction from those devices

6

of electronically stored information, described more fully in Attachment B. Law enforcement believes such electronically stored information will constitute evidence of (i) distribution, and possession with intent to distribute, of controlled substances; and (iii) conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code Section 2251(a), Production of Child Pornography; and 2252A(a), Receipt and Possession of Child Pornography.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The property to be searched includes; Black iPhone cellular phone, unknown serial number (Item #10), Black Samsung cellular phone, unknown serial number (Item #11), Black iPhone cellular phone, unknown serial number (Item # 12), Black Motorola cellular phone, unknown serial number (Item # 14), Samsung cellular phone with multi-color case, unknown serial number (Item # 15), Blue Samsung cellular phone, unknown serial number (Item # 16), Black Samsung cellular phone, unknown serial number (Item # 17), Dark blue Samsung cellular phone, unknown serial number (Item # 21), Red iPhone cellular phone, unknown serial number (Item # 22). The listed devices are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Dr, St Francis, Wisconsin 53235.

7. The applied-for warrant would authorize the forensic examination the **Subject Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

7

8. That affiant states that on Saturday, March 28, 2026 at approximately 2:45pm, members of the Milwaukee Police Department, Milwaukee County Sheriff's Office, Wisconsin State Patrol, and Federal Bureau of Investigation executed a knock search warrant at the address of 2828 S 53rd St, located in the City and County of Milwaukee, regarding an ongoing narcotics investigation. The search warrant was reviewed by Assistant District Attorney Francesco Mineo and approved by the Honorable Susan Roth, Judicial Court Commissioner of the First Judicial District of Wisconsin;

9. The target of the investigation is identified as Edgardo S. Rivera (W/M, 11/26/1988) aka "Pupi". It should be noted that Rivera was developed as a suspect regarding an unrelated Sensitive Crimes Investigation (MPD Case # C2601070104). Members of the Milwaukee Police Department Special Investigations Division (Fugitive Apprehension Unit) later observed Rivera leave his residence in a 2014 Black Toyota Camry (WI Plate AXX7177, VIN #4T4BF1FK9ER360374). Squad 9421 (PO Joseph Serio and PO Daniel Sutyak) later conducted a traffic stop at 3080 S Stratton Dr, Milwaukee, WI 53219, where Rivera was taken into custody without incident;

10. Upon making entry into the residence, law enforcement located no one inside the residence;

11. Located in the basement of the residence was a cooler that contained two (2) clear sealable Tupperware containers that contained a white chunky substance, suspected to be Cocaine powder. Located inside the cooler was a clear orange pill bottle with a white bottle cap that contained suspected MDMA/Methamphetamine pills;

8

12. Located next to the same cooler were empty packaging consistent with packaging used for kilogram quantities of narcotics, a pair of scissors, a metal plate, exacto knife set, an open box of "That's Smart" brand plastic sandwich bags, digital measuring scales and spoon that all had white powdery residue on it that was suspected to be Cocaine;

13. Located in the northwest bedroom of the residence behind a false vent cover in the wall was a black in color Hi-Point semiautomatic handgun (Serial # X6001429) inside of a white cardboard box. Located inside the same northwest bedroom inside a safe in the closet was a US Passport issued to "Edgardo Rivera";

14. While at the FBI Milwaukee Field Office, TFO Eulia Boyd subjected a sample of the suspected Cocaine to a Mobile Detect Cocaine field test (DCO), which yielded positive results for Cocaine HCI with a total weight of 2,949.6 grams. TFO Boyd subjected a sample of the suspected MDMA/Methamphetamine to a Mobile Detect Meth Test (DME), which yielded positive results for MDMA/Methamphetamine with a total weight of 16.8 grams;

15. Located inside the second-floor northwest bedroom on the dresser was a Black iPhone cellular phone (FBI Inventory Item #10);

16. Located inside the second-floor northwest bedroom on the table was a Black Samsung cellular phone (FBI Inventory #Item 11);

17. Located inside the second-floor northwest bedroom dresser was a Black iPhone (FBI Inventory Item #12);

18. Located inside the second-floor southeast bedroom inside of a bag on the

9

floor was a Black Motorola cellular phone (FBI Inventory Item #14);

19. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Samsung cellular phone with multi-color case (FBI Inventory Item #15);

20. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Blue Samsung cellular phone (FBI Inventory Item #16);

21. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Black Samsung cellular phone (FBI Inventory Item #17);

22. Search incident to arrest, located on Rivera's person was a Dark Blue Samsung cellular phone (FBI Inventory Item #21) and a Red iPhone cellular phone (FBI Inventory Item #22);

23. That affiant knows a records check revealed that Rivera was convicted of Title 21, United States Code 846 (Conspiracy to Distribute Controlled Substances) via United States vs. Quiles-Rivera (Case #2016CR00087). That affiant knows that this conviction remains of record and unreversed, thus prohibiting Rivera from possessing firearms;

24. Due to affiant's training and experience, the manner in which the narcotics were packaged, packaging material, the presence of a firearm, multiple cellphones, the above listed items are consistent with street level drug sales of narcotics;

25. That affiant states that the recovered cell phones were inventoried at the FBI Inventory respectively and are currently stored at the FBI Milwaukee Field Office, which is located at 3600 S Lake Dr, St Francis, Wisconsin.

10

# CELLULAR PHONE ANALYSIS

26.    While examining a black Apple iPhone pursuant to a Search Warrant issued in the Eastern District of Wisconsin (26-885M(NJ)) and signed by the Honorable Magistrate Judge Nancy Joseph, which was seized from Rivera's residence, TFO Manuel Lucena noticed Snapchat texts between Rivera (Snapchat username Edgardo-rivera1) and A.G. (Snapchat username theyfw.mx).

27.    On 03/24/2026, The following chat was observed:

> 3:08:37 PM (UTC-5) A.G.: I was asking your opinion on me signing a DNR when I turn 18
> 3:08:51 PM (UTC-5) Edgardo: I don't think you should
> 3:08:57 PM (UTC-5) Edgardo: I'm not one

28.    On 03/25/2026, The following chat was observed:

> 12:21:56 PM (UTC-5) Edgardo: You sound pregnant
> 1:53:15 PM (UTC-5) A.G.: Well I told you not to cum in me

29.    On 03/27/2026, The following chat was observed:

> 12:26:15 PM (UTC-5) Edgardo: I'm free until 2 when I have to leave to my next appointment
> 12:27:17 PM (UTC-5) A.G.: Okay let me eat rq and see if I can leave
> 12:27:25 PM (UTC-5) Edgardo: Ok
> 12:27:42 PM (UTC-5) A.G.: I'll most likely bring my clothes and change in the car when I leave your place
> 12:29:53 PM (UTC-5) A.G.: Also are you feeling better
> 12:42:56 PM (UTC-5) A.G.: Missed call
> 12:43:07 PM (UTC-5) A.G.: Audio Message
> 12:44:51 PM (UTC-5) *System message* Call ended 0 minutes and 47 seconds
> 1:11:47 PM (UTC-5) A.G.: I'm here
> 1:15:07 PM (UTC-5) A.G.: *System message* Call ended 0 minutes and 30 seconds
> 1:23:49 PM (UTC-5) A.G.: Can you hurry up I miss you
> 1:26:58 PM (UTC-5) *System message* Call ended 1 minute and 21 seconds

11

2:09:36 PM (UTC-5) A.G.: Thank you for letting me see you
2:20:32 PM (UTC-5) Edgardo: Absolutely
2:20:37 PM (UTC-5) Edgardo: Thank you (unknown emoji)
2:36:16 PM (UTC-5) A.G.: I miss you already : (
6:02:32 PM (UTC-5) Edgardo: I'm always missing you
6:04:25 PM (UTC-5) A.G.: Me as in a whole or me as in my pussy
6:15:40 PM (UTC-5) A.G.: Ngl I love not seeing you for so long and then coming over because the sex is so good especially after craving it for so long
6:15:40 PM (UTC-5) A.G.: But dont make it so I have to wait to see you

30. SA Shamsi served a subpoena to Snap, Inc for subscriber information for Snapchat username theyfw.mx. This subpoena was served on 05/01/2026 and returned on 05/06/2026.

31. Snapchat username theyfw.mx was associated with an email address that incorporated A.G.'s full name.

32. Using law enforcement databases, case agents identified A.G. with a date of birth of 06/23/2009.

33. Based on A.G.'s date of birth, she is not of a legal age to be engaged in a sexual relationship with Rivera.

34. Law enforcement also saw photographs and videos, while reviewing the phone, that appear to depict A.G. in sexually explicit positions, such that Rivera was in possession of child pornography.

## TECHNICAL TERMS

35. Based on my training and experience, I use the following technical terms to convey the following meanings:

12

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory

13

cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals

14

are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer

15

must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h. Child Pornography: is defined in 18 U.S.C. § 2256 as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. Child pornography is also commonly referred to as Child Sexual Abuse Material, or "CSAM."

i. Chat: as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to

16

respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

j. Minor: means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

k. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including writings and drawings), photographic form (including prints, negatives, videotapes, motion pictures, and photocopies), mechanical form (including printing and typing) or electrical, electronic or magnetic form (including tape recordings, compact discs, electronic or magnetic storage devices such as hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, smart cards, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

l. Sexually explicit conduct: means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

m. Visual depictions: include undeveloped film and videotape, and data stored on a computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

n. Website: consists of text pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol.

o. Cookies: are small files of personalized information that a web server generates and sends to a web browser. Web browsers store the cookies they receive and recall them when a user subsequently accesses that site. Cookies help associate website activity with a specific user.

36.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I believe that the Subject Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training, and experience, I know that electronic devices – like the Subject Device -- can store information for long periods of time.

18

Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

38. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a

19

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40. *Manner of execution.* Because this warrant seeks only permission to examine Subject Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

41. I submit that this affidavit supports probable cause for a search warrant

20

authorizing the examination of the devices described in Attachment A to seek the items described in Attachment B.

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

The property to be searched includes; Black iPhone cellular phone, unknown serial number (Item #10), Black Samsung cellular phone, unknown serial number (Item #11), Black iPhone cellular phone, unknown serial number (Item # 12), Black Motorola cellular phone, unknown serial number (Item # 14), Samsung cellular phone with multi-color case, unknown serial number (Item # 15), Blue Samsung cellular phone, unknown serial number (Item # 16), Black Samsung cellular phone, unknown serial number (Item # 17), Dark blue Samsung cellular phone, unknown serial number (Item # 21), Red iPhone cellular phone, unknown serial number (Item # 22). The listed devices are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Dr, St Francis, Wisconsin 53235.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.      The following materials, which constitute evidence of the commission of a criminal offense; contraband; the fruits of crime; or property designed, or intended for use, or which is or has been used as the mans of committing a criminal offense, namely violations of Title 21, United States Code, Sections 841 and 846; and Title 18, United States Code Section 2251(a) and 2252A(a):

    a.  For any electronic storage device, computer hard drive, electronic device, or other physical object upon which electronic information can be recorded (hereinafter, "electronic storage device") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

        i.  Evidence of who used, owned, or controlled the electronic storage device at the time of the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

        ii.  Evidence of software that would allow others to control the electronic storage device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        iii.  Evidence of the lack of such malicious software;

23

iv. Evidence indicating how and when the electronic storage device was accessed or used to determine the chronological context of electronic storage device access, use, and events relating to crime under investigation.

v. Evidence indicating the electronic storage device user's location and state of mind as it relates to the crime under investigation;

vi. Evidence of the attachment to the electronic storage device of other storage devices or similar containers for electronic evidence;

vii. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the electronic storage device;

viii. Evidence of the times the electronic storage device was used;

ix. Passwords, encryption keys, and other access devices that may be necessary to access the electronic storage device;

x. Documentation and manuals that may be necessary to access the electronic storage device or to conduct a forensic examination of the electronic storage device; and,

xi. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

24

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.